## Joseph W. DARLAK, Plaintiff–Appellant,

v.

## COLUMBUS–AMERICA DISCOVERY GROUP, INCORPORATED; Thomas G. Thompson, Defendants–Appellees,

and

Trustees of Columbia University, Defendant.

No. 94–1874.

United States Court of Appeals, Fourth Circuit.

Argued March 6, 1995.

Decided July 7, 1995.

**ARGUED:** David Alan Battaglia, Gibson, Dunn & Crutcher, Los Angeles, CA, for appellant. Robert Ward Trafford, Porter, Wright, Morris & Arthur, Columbus, OH, for appellees. **ON BRIEF:** Richard P. Levy, Gibson, Dunn & Crutcher, Los Angeles, CA, Carl E. Person, Law Offices of Carl E. Person, New York City, for appellant. William J. Kelly, Jr., James A. King, Porter, Wright, Morris & Arthur, Columbus, OH, Richard T. Robol, Jane E. Rindsberg, Columbus–America Discovery Group, Columbus, OH, David N. Ventker, Huff, Poole & Mahoney, P.C., Virginia Beach, VA, for appellees.

Before RUSSELL, WIDENER, and HALL, Circuit Judges.

Affirmed by published opinion. Judge HALL wrote the opinion, in which Judge RUSSELL and Judge WIDENER joined.

## OPINION

K.K. HALL, Circuit Judge:

Joseph W. Darlak appeals the district court's grant of summary judgment to Columbus–America Discovery Group, Inc., and its president, Thomas G. Thompson. We affirm.

### I.

On February 26, 1984, a crew of oceanographers from Columbia University set out from Norfolk, Virginia, aboard the research vessel ROBERT D. CONRAD to conduct a sonar survey of an area of the ocean floor thought to be the final resting place of the S.S. CENTRAL AMERICA, a treasure-laden passenger ship that had sunk in a hurricane in 1857. Darlak, though not an oceanographer, was also aboard the CONRAD. Darlak had spent the previous six months researching the CENTRAL AMERICA's location for Jack F. Grimm, who, along with Harry G. John, had commissioned the survey. Grimm designated Darlak as his representative on the expedition.

During the survey, the sonar revealed a target very near where the CENTRAL AMERICA was eventually found in 1988 by Columbus–America.[1] Upon locating the CENTRAL AMERICA, Columbus–America commenced an *in rem* action in the district court to establish its rights regarding the shipwreck. On April 2, 1990, the day before trial of the matter began, Grimm and John, maintaining that they deserved a share of the treasure because Columbus–America had allegedly relied on the CONRAD data to find the CENTRAL AMERICA, were granted leave to intervene.[2]

When counsel for the underwriters and for Grimm and John made their opening statements the next morning, Darlak was in the courtroom with his attorney, Joe Cheavens, the chief of the maritime litigation section at the Houston law firm of Baker & Botts.[3]

---

1. The history of the CENTRAL AMERICA, and of the efforts of Grimm, John, and Columbus–America to find it, is detailed in our prior opinions addressing the primary admiralty proceedings. *See Columbus–America Discovery Group v. Atlantic Mut. Ins. Co.,* 974 F.2d 450 (4th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1625, 123 L.Ed.2d 183 (1993) (*CADG I*); *Columbus–America Discovery Group v. Atlantic Mut. Ins. Co.,* 56 F.3d 556 (4th Cir.1995) (*CADG II*).

2. At the conclusion of the trial, the district court found that Columbus–America did not rely on the CONRAD data. In *CADG I,* we vacated that judgment and remanded the case so that Grimm and John could conduct additional discovery. The supplemental evidence did not convince the district court; it reaffirmed its earlier finding, and, in *CADG II,* we affirmed the court's judgment.

3. Darlak had recently retained Baker & Botts to protect his interests in the matter, and, in the

Darlak left town that evening, but returned three days later. On that date, April 6, 1990, he entered into a written agreement with Grimm and John. The agreement set out Darlak's contention that he had researched and developed the search coordinates that were used during the CONRAD expedition; it acknowledged that Grimm and John had intervened in the *in rem* proceedings, and provided that

> Darlak is prepared to intervene in the above proceedings. Attached hereto and incorporated herein are copies of the papers that Darlak is prepared to file. The parties agree that in consideration of Darlak not seeking to intervene, Darlak's rights will not be prejudiced with respect to any proceedings that he may hereafter institute to assert his claim to participate in the find or salvage of the SS CENTRAL AMERICA.... Darlak agrees to cooperate with the efforts of Grimm/John to establish their rights vis-a-vis Columbia, Columbus–America Discovery Group, Inc. and the wreck of the SS CENTRAL AMERICA by agreeing to testify if requested to do so without the necessity of being served with subpoena, by consulting with Grimm/John and his counsel from time to time upon reasonable notice, and by providing such records as Darlak may have or that are pertinent to the proceedings.

Shortly after the district court entered judgment against Grimm and John at the first trial, *see* note 2, *supra,* Darlak filed the instant action in the Southern District of New York against Columbia University,[4] Columbus–America, and Thompson. After our decision in *CADG I,* Darlak's case was transferred to the Eastern District of Virginia. Upon transfer, Darlak, in apparent breach of his agreement with Grimm and John, at last moved to intervene in the *in rem* proceeding.[5] After limited discovery, Columbus–America and Thompson moved for summary judgment; that motion was granted on June 13, 1994. Darlak appeals.

## II.

There is a good case to be made that Darlak may not maintain a claim separate from that asserted by Grimm and John because he has no proprietary interest in the coordinates that he allegedly furnished to the CONRAD expedition, either because he was Grimm's agent, and, therefore, his claim is merely derivative, or because the coordinates had previously been widely published and were thus in the public domain. Darlak, as might be expected, contends that genuine issues of material fact regarding the questions of agency and public domain remain in dispute, thereby precluding summary judgment for the appellees.

We will assume, without deciding, that Darlak is correct that the existence of factual disputes would prevent summary disposition of his claim on the merits. Summary judgment on behalf of Columbus–America and Thompson is nevertheless appropriate because Darlak failed to assert a claim before the district court in the *in rem* proceeding.

Actions *in rem,* or "against the thing," are designed to adjudicate rights in specific property as against all of the world, and judgments in such cases are binding to the same extent. Black's Law Dictionary 713 (5th ed. 1979) (*citing Flesch v. Circle City Excavating & Rental Corp.,* 137 Ind. App. 695, 210 N.E.2d 865 (1965)). *In rem* proceedings in admiralty are no different. "The whole world, it is said, are parties in an admiralty cause; and, therefore, the whole

---

days or weeks preceding the trial, another lawyer in the firm had gone to Norfolk and discovered the nature of the proceeding about to commence.

**4.** Darlak's claims against Columbia were dismissed with prejudice on March 21, 1994.

**5.** Darlak later withdrew that motion and substituted one seeking to both intervene in the *in rem* proceeding and consolidate with it the instant *in personam* action. The district court seemed inclined to grant Darlak the right to simply intervene, but noted that consolidating the *in personam* action—for which Darlak had demanded a jury trial—would necessitate rehearing much of the testimony and resubmitting many of the exhibits that had been introduced in the first trial respecting findings that had not been disturbed on appeal. Because Darlak was unwilling to intervene without consolidation, the court denied the motion on March 26, 1993. Darlak did not appeal that ruling.

world is bound by the decision." *Thorsteinsson v. M/V DRANGUR*, 891 F.2d 1547, 1553 (11th Cir.1990), *quoting* THE MARY, 13 U.S. (9 Cranch) 126, 144, 3 L.Ed. 678 (1815).[6]

The crux of Darlak's claim for relief is that he is entitled to a portion of the salvaged *res.* If Columbus–America and Thompson had indeed availed themselves of information proprietary to Darlak to find the CENTRAL AMERICA, Darlak would have undoubtedly deserved a salvage award. However, the time and place to present that claim was in the *in rem* proceeding, where all salvage awards are determined; the liability phase of that proceeding has now concluded, and it is *res judicata* as to all the world, including Darlak. As Darlak has no claim against Columbus–America and Thompson outside the context of their performance as salvors, he may not maintain an *in personam* action against them.

### III.

Darlak twice deliberately opted to forgo the opportunity to intervene in the *in rem* proceeding. Under the circumstances, we have no difficulty concluding that Darlak is not entitled to a bite of a different apple merely because he would not taste the first one. He cannot convert any claim that he may have had against the CENTRAL

AMERICA into a claim against Columbus–America and Thompson personally.[7]

*AFFIRMED.*

---

**6.** *See also Todd Shipyards Corp. v. F/V Maigus Luck*, 243 F.Supp. 8, 11 (D.C.Z.1965):

> The familiar principle that all the parties to a suit are bound by the decree has its widest application in cases of admiralty suits and proceedings in rem. The decree, as has been remarked, can dispose only of the thing but, so far as the thing is concerned, all the world is bound by the decree. That is to say, a decree in a proceeding in rem as to the title, or possession, or sale, or forfeiture of the thing, binds all the world. No man is allowed to come in and say that the decree does not bind him and that he will have the matter retried: this is because all the world is party to a suit in rem.

*quoting* 2 Benedict on Admiralty § 231 (6th ed. 1965).

Of course, due process demands adequate notice to persons who will be bound by any judgment—in this case, "the whole world." Rule C(4) of the Supplemental Rules for Certain Admiralty and Maritime Claims provides that, in cases

like the one before us where the property has not been released on bond, notice is sufficient if "the plaintiff ... cause[s] public notice of the action and arrest to be given in a newspaper of general circulation in the district, designated by order of the court. Such notice shall specify the time within which the answer is required to be filed...." The Advisory Committee note on the Rule states that "[i]f ... the vessel is not released [on bond], general notice is required in order that all persons, including unknown claimants, may appear and be heard, and in order that the judgment in rem shall be binding on all the world." The record in the *in rem* proceeding reflects that Columbus–America complied with Rule C(4)'s notice requirement. Moreover, Darlak had actual notice of the proceeding prior to trial.

**7.** Our disposition of this appeal renders it unnecessary to address Darlak's contention that the district court improperly denied him sufficient discovery to effectively oppose the appellees' motions for summary judgment.