**R.M.S. TITANIC, INC., successor in interest to Titanic Ventures, limited partnership, Plaintiff,**

**v.**

**The WRECKED AND ABANDONED VESSEL, its engines, tackle, apparel, appurtenances, cargo, etc., Located within one (1) nautical mile of a point located at 41° 43' 32" North Latitude and 49° 56' 49" West Longitude, believed to be the RMS Titanic, in rem, Defendant.**

**Civil Action No. 2:93cv902.**

United States District Court,
E.D. Virginia,
Norfolk Division.

April 1, 1996.

F. Bradford Stillman, Mark S. Davis, David M. Young, McGuire, Woods, Battle & Boothe, Norfolk, VA, for Plaintiff R.M.S. Titanic, Inc., etc.

Jonathan M. Epstein, James T. Shirley, Jr., Haight, Gardner, Poor & Havens, Washington, DC, Lawrence G. Cohen, Anne B. Shumadine, Mezzullo & McCandlish, Norfolk, VA, for John A. Joslyn, Movant.

## ORDER

CLARKE, District Judge.

This matter is before the Court on John S. Joslyn's Motion Pursuant to Fed.R.Civ.P. Rule 60(b) Seeking to Rescind the Court's Order Naming R.M.S. Titanic, Inc., the Salvor in Possession of the *R.M.S. Titanic.* The issue before the Court at the present time is whether Joslyn has standing to bring such a motion or if not, whether the Court, in its discretion, may reconsider its prior Order *sua sponte.* For the reasons stated below, the Court FINDS that Joslyn does have standing and that the Court does have the power to consider the appropriateness of continuing to enforce its earlier Order.

### I. Facts

On June 7, 1994, this Court entered an Order both conferring salvor-in-possession status of the *RMS Titanic* to RMS Titanic, Inc. (RMSTI) and granting it the exclusive rights over any items salvaged from the *RMS Titanic* while it remained the salvor in possession.[1] Following the entry of this Order, RMSTI successfully completed a salvage expedition to the *RMS Titanic* during the 1994 "weather window."[2] On August 10, 1994, RMSTI presented its *Periodic Report of Salvor in Possession on the Progress of Recovery Operations* to the Court. The Court entered an Order filing the Periodic Report, and also noted that RMSTI had previously conducted successful salvage operations in June of 1987 and June of 1993. Order of Aug. 10, 1994. Since that time, RMSTI has not presented or filed any periodic reports.

On February 20, 1996, John A. Joslyn (Joslyn) filed a motion pursuant to Rule 60(b) of the Federal Rules of Civil Procedure asking the Court to rescind its order naming

1. The Court's Order provided that:

   RMS Titanic, Inc. is the salvor in possession of the wreck and wreck site of the *RMS Titanic,* including without limitation, the hull, machinery, engine, tackle, apparel, appurtenances, contents and cargo, and that RMS Titanic, Inc. is the true, sole and exclusive owner of any items salvaged from the wreck of the defendant vessel in the past and, so long as RMS Titanic, Inc. remains salvor in possession, items salvaged in the future, and is entitled to all salvage rights, and that default judgement is entered against all potential claimants who have not yet filed claims and such claims are therefore barred and precluded so long as RMS Titanic, Inc. remains salvor in possession. . . .

   Order of June 7, 1994.

2. Because of weather conditions at the site, salvage operations are only feasible during the months of June, July, and August.

RMSTI salvor in possession of the *RMS Titanic.* Joslyn claims that RMSTI's status as salvor in possession should be rescinded because it has failed to diligently salvage the *RMS Titanic* and has evidenced no intention to salvage it in the future. In its response, RMSTI asserts that Joslyn has no standing to bring these claims. Consequently, before the Court can hold a hearing on the merits of Joslyn's allegations, it first must decide whether Joslyn has standing to raise them or, in the alternative, whether the Court can examine them on its own initiative.

## II. Analysis

### A. Standing

▪ Joslyn filed his motion pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. The relevant portions of this rule provide that "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons ... (5) ... it is no longer equitable that the judgment should have prospective application." Fed.R.Civ.P. 60(b). The rule further provides that a motion brought pursuant to these subsections must be made within a reasonable time. *Id.*

RMSTI contends that Joslyn was not "a party" to the original action and thus lacks standing to bring his motion under Rule 60(b). It is true that Joslyn was not a named party in the original Order. The Fourth Circuit, however, has stated that "[a]ctions *in rem,* or 'against the thing,' are designed to adjudicate rights in specific property against *all of the world,* and judgments in such cases are binding to the same extent." *Darlak v. Columbus–America Discovery Group, Inc.,* 59 F.3d 20, 22 (4th Cir.1995) (emphasis added), *cert. denied,* —— U.S. ——, 116 S.Ct. 817, 133 L.Ed.2d 761 (1996). This rationale also applies to *in rem* admiralty proceedings.[3] *Id.* It logically follows that if the whole world are parties bound by the judgment, then the converse should also be true: the whole world are parties who may request relief from the judgment. Consequently, in this case, Joslyn is "a party" within the

meaning of Rule 60(b) and, therefore, has standing to bring a motion requesting relief from this Court's June 7, 1994 Order.

### B. Discretionary power of the Court raise the issue *sua sponte*

▪ Under Fourth Circuit precedent, this Court may also raise *sua sponte* the issue of the appropriateness of continuing RMSTI's status as salvor in possession. In *United States v. Jacobs,* the court stated that Rule 60(b) "need not necessarily be read as depriving the court of the power to act in the interest of justice in an unusual case in which its attention has been directed to the necessity for relief by means other than a motion." 298 F.2d 469, 472 (4th Cir.1961); *see also Simer v. Rios,* 661 F.2d 655, 663 n. 18 (7th Cir.1981), *cert. denied,* 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982); *International Controls Corp. v. Vesco,* 556 F.2d 665, 668 n. 2 (2d Cir.1977), *cert. denied,* 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 758 (1978); *Battle v. Liberty Nat'l Life Ins. Co.,* 770 F.Supp. 1499, 1513 n. 40 (N.D.Ala.1991), *aff'd,* 974 F.2d 1279 (11th Cir.1992), *cert. denied,* 509 U.S. 906, 113 S.Ct. 2999, 125 L.Ed.2d 692 (1993).

The case at hand falls squarely within the type of cases envisioned by the *Jacobs* court. This case is an unusual one in that it deals with the salvage rights of a unique, historical vessel. Furthermore, "treasure salvage" cases are in themselves unusual. *See* 2 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 16–7, at 335–36 (2d ed. 1994). The limited case law on the subject suggests that salvors can lose their possessory rights. *See, e.g., Treasure Salvors, Inc. v. Unidentified Wrecked and Abandoned Sailing Vessel,* 640 F.2d 560, 567 (5th Cir.1981) (salvor has right to exclude others "so long as the original salvor appears ready, willing and able to complete the salvage project"); *Deep Sea Research v. Brother Jonathan,* 883 F.Supp. 1343, 1361 (N.D.Cal.1995) (salvor "may lose his right to uninterrupted salvage operations if he does not assiduously undertake efforts to rescue the property"); *cf. Columbus–America Discovery Group v. Atlantic Mutu-*

---

3. "The whole world ... are parties in an admiralty cause; and, therefore, the whole world is bound by the decision." *Darlak,* 59 F.3d at 22–23 (4th Cir.1995). *Id.* (citations omitted).

*al Ins. Co.,* 974 F.2d 450, 460 (4th Cir.1992) (salvor "must have the intention and the capacity to save the property involved"), *cert. denied,* 507 U.S. 1000, 113 S.Ct. 1625, 123 L.Ed.2d 183 (1993). If, as these cases imply, a party can lose its status as a salvor in possession, then it follows that there must be a procedural vehicle in which the issue can be raised subsequent to a court's grant of salvor-in-possession status. If not, a court's grant of salvor-in-possession status would be binding on the whole world forever, and a vessel would never be actually salvaged in a situation where the salvor fails to use its rights once granted. This possibility violates the underlying purpose of salvage law, the complete salvaging of a vessel. *See Columbus–America,* 974 F.2d at 460–61 ("the primary purpose of salvage law is the preservation of property"); *MDM Salvage, Inc. v. Unidentified, Wrecked and Abandoned Sailing Vessel,* 631 F.Supp. 308, 312 (S.D.Fla. 1986) (salvage law is primarily concerned with the successful recovery of the vessel).

In his motion, Joslyn claims that this scenario is occurring—RMSTI is not using its salvor-in-possession rights. Because its rights are exclusive, the opportunity to recover the *RMS Titanic* which has both historical and archaeological significance, will be wasted if these allegations are true. Thus, because of the unusual nature of salvage law in general and of this case in particular, the Court finds that it is in the public interest to determine whether RMSTI is "wasting" its rights to salvage the *RMS Titanic.*

Finally, the "interests of justice" in this case also require the Court to reconsider the continuing validity of its previous Order. In the original action, the Court used its discretion to grant RMSTI salvor-in-possession rights because it believed that granting exclusive rights would lead to the actual salvaging of the *RMS Titanic* and the use of the recovered artifacts in the public interest and would also prevent a destructive "free-for-all" looting of the historical vessel. Where, as here, the salvor in possession fails to use the rights the Court granted, the Court should be able to rescind such rights.

Accordingly, even if Joslyn has no standing to file a rule 60(b) motion, the document he filed, at the very least, has brought to the attention of the Court the possibility that RMSTI is failing to diligently pursue its salvor-in-possession rights, and under *Jacobs,* the Court may *sua sponte* question whether it is equitable to continue to enforce its past Order granting RMSTI salvor-in-possession rights.

**C. Court's inherent power to modify the original Order**

In its prior Order, the Court found that RMSTI was the salvor in possession of the wreck and that "so long as [RMSTI] remains salvor in possession," it retained all salvage rights. Order of June 7, 1994. This language inherently left the decision as to whether RMSTI, at any given time, was still a salvor in possession up to this Court. At the very least, therefore, this Court has the power to hear the evidence and decide whether RMSTI still falls within the Court's June 7, 1994 Order.

**III. Conclusion**

For the aforementioned reasons, the Court **FINDS** that Joslyn has standing to bring a Rule 60(b) motion before the Court in this matter. In addition, the Court **FINDS** that it also has the authority to raise this matter either *sua sponte* under Rule 60(b) or under its inherent power to modify and interpret its original Order. Accordingly, the Court **GRANTS** Joslyn's request for a hearing.